Curia, per Earle, J.
If it be meant by .the second ground of the motion for a new trial, to mate the question, whether the courts of this State would enforce the laws of the State of Virginia, in a civil suit, where the title to property depends upon them, I should hardly consider it entitled to other answer than this, that courts would cease to answer the ends of justice, if persons residing in other States and countries could not enforce their claims to property here when their title is acquired under a'law of the place of their residence, from whence the property itself has been brought. In all civil suits, concerning personal chattels, where the title has been acquired, or upon contracts which had been made in another State or country, reference is constantly made to the law of the place, when it constitues part of the title to the property, or when it is necessary to put a right construction upon the contract. In Allen vs. Watson, 1 Hill, 319, money won at play in Georgia was allowed to be recovered back in an action of trover here: such gaming there being unlawful. In Waties vs. Bryant & Hall, at the last Term, the plaintiff recovered in trover for a slave upon a statute of North Carolina, directly in opposition to the law here upon the same subject. I suppose it is intended to suggest the question, whether it is not in the nature of a penal enactment, and therefore not to be enforced here. But it is very obvious that such is not the character of the Act: that it is not the purpose of it to annex a personal penalty, to operate only ¦upon the tenant for life, in casé he should permit the slaves *10 to be removed' out of the State, without the permission of him in' remainder or reversion. The purpose of the Act is obviously to afford the reversioner or remainder man an adequate remedy; which, in order to be effectual, must be two-fold. It provides, in the first place, that the tenant for life shall forfeit the slaves “ unto the person who shall have the reversion or remainder the meaning of which is, that the life estate shall cease and be determined, and the rever-sioner or remainder man shall be entitled to immediate possession. But inasmuch as the slaves might be secretly removed to a great distance, and might never be discovered so as to enable the person entitled to prosecute his claim to the property, this provision alone would afford an inadequate remedy. The Act therefore provides further, that the tenant for life shall forfeit also “the full value of the slaves removed, unto the person." who shall have the reversion or remainder.” These remedies are manifestly intended to be cumulative; the reversioner, or remainder man is entitled to both; and such is understood to have been the construction of the Act in the Courts of Virginia. It would be quite as reasonable for the tenant for life, when sued for.the value in Virginia, to defend himself by saying the person entitled had recovered the property in Louisiana, as for the defendant here sued for the property to say the plaintiff had a judgment against the insolvent tenant for life, in Virginia. The Act of Virginia is a part of the plaintiff’s title showing that the estate for life, which alone postponed the enjoyment of the property, had ceased and been determined by the act of the tenant for life himself, under whom the defendant claims, and from whom he could, therefore, derive no title: and the recovery against the tenant for life there, is no bar to an action of trover for the property against a person in possession here or elsewhere. These remarks dispose of the two first grounds.
It is difficult to conceive by what process of reasoning the conclusion is attained that the defendant is tenant in common with the plaintiffs who were not barred by the statute of limitations. Two of the plaintiffs were barred; and the other three could only recover three-fifths of the value of the slaves. Two of them failed to recover because -they did not bring their actions within the time limited. But how had *11 the defendant acquired his title ? Certainly by no act of theirs; neither by purchase nor by descent. The defendant had purchased the estate for life, under one who had forfeited it — surely the tenant for life was not joint tenant with the plaintiffs, who became entitled to the possession only by the act which deprived the tenant for life, and those claiming under him, of their right to possession. There is neither unity of title, unity of estate, nor unity of possession.
On the third ground, that the plaintiffs were not entitled to the increase of the female slave: and on the fifth, that the plaintiffs are all barred by the statute of limitations, it is hardly necessary to remark. The law on the former, and the facts on the latter, are too clearly against the defendant to admit of being made plainer.
The motion for a new trial is refused.